## UNITED STATES v. BALODIMAS.

No. 9774.

United States Court of Appeals
Seventh Circuit.

Oct. 25, 1949.

Ode L. Rankin, Chicago, Ill., Charles W. Schaub, Chicago, Ill., Oscar E. Bland, H. Kennedy McCook, Washington, D. C., for appellant.

Otto Kerner, Jr., U. S. Atty., William C. Gallagher, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

In each count of a five-count indictment returned May 5, 1948, it was charged that the defendant "did wilfully and knowingly attempt to defeat and evade a large part of the income tax due and owing by him to the United States of America * * * by filing and causing to be filed with the Collector of Internal Revenue * * * a false and fraudulent income tax return. * * *." Each of the counts was predicated upon Title 26 U.S.C.A. § 145(b) (Internal Revenue Code) and charged the commission of an offense in different years, to wit, 1942, 1943, 1944, 1945 and 1946. The defendant was tried by a jury which found him not guilty on Count 1, covering the calendar year 1942, and Count 5, covering the calendar year 1946. He was found guilty on Count 2, covering the year 1943, Count 3, covering the year 1944, and Count 4, covering the year 1945. On December 7, 1948, a judgment was entered upon the jury's verdict, from which the defendant appeals.

The two principal grounds relied upon for reversal are (1) that the court erred in its refusal to direct a verdict for the defendant at the close of the government's case, or in any event at the close of all the evidence, and (2) that certain of the court's instructions to the jury were prejudicially erroneous.

■ While a reading of the testimony discloses that the case is close on its facts, we reach the conclusion that the evidence was sufficient to justify the court in sending the case to the jury. At the same time, we are of the view that the court committed prejudicial error in its charge to the jury, which requires reversal for a new trial. Such being the case, we think no good purpose could be served in a narration of the evidence further than necessary to highlight the court's charge subsequently to be considered.

The defendant was the owner of and engaged in the restaurant business at 115 West Jackson Boulevard, Chicago, from which his income was derived during the years named in the indictment. His income tax returns for such years were prepared from and showed the income disclosed by the books and records kept by the defendant. The essential controversy in the case arises from the government's theory that large amounts of income were withheld by the defendant in such a manner as not to be shown upon his books and records from which the returns were made. This theory of the government is disputed by the defendant, who contends that all his income was shown on the books and records and, therefore, included in his returns.

The two main witnesses relied upon by the government were Tula Kokonos and Dianne Rontos, who served the defendant in the capacity of bookkeeper and cashier. The former was employed in this capacity from the beginning of the years in question until March 1944, when she was succeeded by the latter in the same capacity until 1947, when the business of the defendant was closed. Each of these witnesses testified that she was instructed by the defendant to withhold each day certain amounts of cash from the income of the business, together with customers' checks corresponding with the amount of cash withheld, and that such cash and customers' checks were at the end of the day's business placed in a purse. They further testified that the cash thus withheld was not rung up on the cash register. These cashiers kept a cash box which showed the receipts of each day's business as disclosed by the cash register tape. Another person, a bookkeeper, made up a ledger from the cash book, and from the ledger annual statements were made upon which defendant's income tax returns were predicated. The defendant admits that the money was withheld, as testified to by these witnesses, but offered an explanation with considerable support as to why it was withheld and that it was later accounted for, which, if true, would have exonerated him of the offenses charged. The explanation offered by the defendant, however, goes to the merits of the controversy, that is, whether a

jury question was presented, and for our present purpose need not be pursued further.

■ With this brief statement, designed only to show the situation occupied by these two witnesses, we are brought at once to the court's charge on accomplices which the defendant contends is prejudicial in its nature and requires a reversal. With this contention we agree. The charge in this respect is as follows: "The witnesses Tula Kokonos and Dianne Rontos, who have testified in this case, have openly admitted that they are law violators and have openly admitted the part that they had in the commission of crime. They may be termed accomplices in this case. You will scrutinize their testimony very carefully, Ladies and Gentlemen, and before convicting the defendant upon their testimony alone you should be absolutely certain, in your own minds, that they are telling the truth. But the mere fact that they are accomplices, the mere fact that they are law violators, does not mean that they cannot tell the truth, and it does not mean that you cannot convict a person charged upon the testimony of an accomplice alone, if you believe that testimony to be true. So, the weight and credit to be given to the testimony of a person who has admitted his part in the commission of crime is for you to decide."

The portion of this instruction which states that the witnesses "have openly admitted that they are law violators and have openly admitted the part that they had in the commission of crime," and which characterizes them as accomplices is, in our judgment, not justified by the record and is clearly erroneous. And this is our view, notwithstanding the statement in the government's brief, "The court in stating that the witnesses Dianne Rontos and Tula Kokonos 'may be termed accomplices in this case' was correct in that both witnesses caused the crime to be committed and admitted their participation in the crime." "An accomplice is an associate in guilt in the commission of a crime, a participant in the offense as principal or accessory." Singer v. United States, 3 Cir., 278 F. 415, 419. "An accomplice is always a parti-

ceps criminis and is concerned in the commission of the crime." People v. Gleitsmann, 361 Ill. 165, 171, 197 N.E. 557, 560. In our view, they were not accomplices either as a matter of law or of fact as that term is used in criminal law. Even if the record furnished any basis for the contention that they were accomplices, and we think it does not, it was a question for the jury and not the court. Holmgren v. United States, 217 U.S. 509, 523, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann.Cas. 778; United States v. Beadon, 2 Cir., 49 F.2d 164, 169.

■ We are unable to find the slightest basis for the statement that they "have openly admitted that they are law violators and have openly admitted the part that they had in the commission of crime." It must be remembered that the only crime with which the court or jury were then concerned was the charge against the defendant that he attempted to defeat and evade his income tax by filing false and fraudulent returns. There is no proof that these witnesses aided or assisted in any manner in the preparation or filing of such returns or that they had any knowledge of their falsity, or even that they had knowledge of defendant's purpose in withholding funds from the day's receipts or that they consciously committed any wrong.

The vice of the instruction, of course, is not the effect to be ascribed to these witnesses by the court's improper characterization but the effect which it had or was calculated to have upon the minds of the jury in deciding the issue before it, that is, the guilt or innocence of the defendant. If the jury accepted the court's theory that these witnesses were accomplices and had openly admitted that they were law violators and that they had a part in the commission of the crime, it is difficult to discern how they could have avoided the conclusion that the defendant was also guilty. The charge presupposes that the crime charged had been committed by the defendant and that the witnesses had openly admitted their part in its commission. Ordinarily in a criminal trial there is no question but that a crime has been committed; the question at issue is whether it was committed by the defendant. Here, we have the reverse of

488

that situation. The question for determination was whether a crime had been committed. The effect of this instruction was to resolve that question in the affirmative. With such a resolution there was nothing for the jury to do but to find the' defendant guilty.

■ The government advances many reasons why a reversal is not required because of this instruction. It points out that the defendant should not be heard to complain because he requested an accomplice instruction. The record does so indicate, but such proposal is not in the record and we have no way of knowing what it contained. Even if we had such knowledge, we do not see how that would cure the giving of an erroneous instruction. The government also contends that the point was not preserved for failure on the part of defendant to comply with Rule 30 of the Rules of Criminal Procedure, 18 U.S.C.A. The record shows that the court informed counsel that he was going to give the instruction in controversy in place of the one proposed and that counsel might have an exception, which was noted. This may not be a strict compliance with the rule, but it is not easy to discern what more counsel for the defendant could have done under the circumstances. Moreover, in our view, the error in this instruction affects the substantial rights of the defendant which we are obliged under Rule 52 of the Rules of Criminal Procedure to notice. The government not only argues that this instruction was not prejudicial to defendant but was in fact beneficial. This argument is predicated on the usual admonition contained in the charge that the testimony of these designated accomplices should be scrutinized by the jury carefully, and that the jury before convicting the defendant upon their testimony alone should be absolutely certain in their own minds that they were telling the truth. Assuming that the admonition was proper if the witnesses had in ifact been shown to be accomplices, we are unable to discern how it could cure or minimize the prejudicial statement that they had "openly admitted the part that they had in the commission of crime."

In view of our conclusion as to the prejudicial nature of the charge just discussed, we find it unnecessary to consider other criticisms directed at the instructions. The judgment is reversed and the cause remanded for a new trial.